OPINION
GARTH, Circuit Judge.
Both the Bankruptcy and District Courts here held that Appellees James R. Arcara, Frederick R. Cronin, Robert S. Smith and Thomas L. Thompson (collectively, the “Appellees”) — former long-term senior executives of Appellant General Da-tacomm Industries Inc. and its affiliates (“DataComm”) — were “retired employees” within the meaning of 11 U.S.C. § 1114 and were therefore entitled to their retiree benefits. Section 1114 of the United States Bankruptcy Code (“Bankruptcy Code”) affords certain procedural protections to “retired employees” of Chapter 11 debtors. See 11 U.S.C. § 1114(a), (e). When applicable, these procedural protections are held to override the provisions of 11 U.S.C. § 365, which generally allow a debtor in possession, subject to the court’s approval, to reject any executory contract of the debtor in order to relieve the estate of onerous and burdensome future obligations. See 11 U.S.C. § 365(a).
The questions presented in this appeal are:. (1) whether the term “retired employees,” as contemplated by § 1114, encompasses the concept of “forced retirement,” at least in situations where, as here, employees on the verge of voluntary retirement are strategically and deliberately terminated without cause by a debtor; and (2) if so, may DataComm’s executory agreement providing benefits for retirees be rejected pursuant to 11 U.S.C. § 365. As stated, both courts rejected Data-Comm’s attempt to terminate or otherwise modify the Appellees’ retiree benefits without first complying with the mandates and procedural requirements of § 1114.
We hold that involuntary termination of employees on the verge of retirement cannot deprive such employees of the procedural protections of § 1114. Accordingly, the District Court did not err in affirming the Bankruptcy Court’s order, which denied rejection of DataComm’s agreement to provide such benefits.
I.
A.
The material facts on appeal are not in dispute. On or about September 4, 1997, the Board of Directors of DataComm approved a “Benefit Agreement for Long Term Senior Executive Officers and Other Senior Level Employees” (the “Benefit Plan”). DataComm originally entered into the Benefit Plan with Appellees Arcara, Cronin, and Smith. Thompson, the remaining Appellee, was added as an Eligible Executive[1] subsequent to the establishment of the Benefit Plan.
*618 The Benefit Plan provided for two discrete forms of benefits. First, DataComm was required to pay the annual premiums of up to $7,000 for Long Term Care insurance coverage for the lifetime of each Eligible Executive and his spouse (“Long Term Care Benefits”).[2] Second, the Benefit Plan also provided that, upon retirement, each Eligible Executive and his spouse would receive, at DataComm’s sole cost, a lifetime continuation of the health insurance benefits that DataComm was then furnishing to the Eligible Executive (“Retirement Health Benefits”).[3]
The Benefit Plan listed at least five actions which, if taken by Eligible Executives, would lead to discharge and loss of all benefits. It essentially provided that DataComm, in its sole judgment, could effectively terminate all benefits thereunder if, among other things, the Eligible Executive violated any confidentiality agreement; disclosed any proprietary information; refused cooperation with Data-Comm in litigation; directly or indirectly became employed by, or purchased stock of a competitor; brought suit against Da-taComm (except as to claims relating to the Benefit Plan); or disparaged the company. Benefit Plan ¶ 6.[4] Aside from the *619 grounds for terminating benefits specified in Paragraph 6 of the Benefit Plan, Data-Comm reserved no other right to rescind or amend the Benefit Plan.
B.
On November 2, 2001, DataComm filed for relief under Chapter 11 of the Bankruptcy Code, and pursuant to Sections 1107 and 1108 of the Bankruptcy Code, DataComm continued to possess its properties and manage its businesses as debt- or^) in possession. Thereafter, on November 19, 2001, DataComm advised the Appellees that they would be terminated on November 30, 2001, and that the Benefit Plan would be terminated on that same date.
Ten days later, on November 29, 2001, DataComm filed its motion with the Bankruptcy Court to reject the Benefit Plan pursuant to Section 365 of the Bankruptcy Code (the “365 Motion”). A day later, on November 30, 2001, -the Appellees were formally terminated. DataComm concedes that the termination was without cause. At the time of their termination, the Ap-pellees were all over 65 years of age: Thompson was 71, Cronin was nearly 70, Smith was over 68, and Arcara was near 67.
The Appellees objected to the 365 Motion, claiming that the Benefit Plan qualified for treatment under § 1114 of the Bankruptcy Code, and that DataComm was therefore required to comply with the procedural requirements of that statute before terminating or modifying the Benefit Plan. The Bankruptcy Court conducted a hearing on April 25, 2002 to determine whether § 365 or § 1114 governed the Benefit Plan. The Bankruptcy Court held that § 1114 governed, and entered an Order denying DataComm’s motion to reject the Benefit Plan. The Bankruptcy Court stated that “[i]n the event ... [Data-Comm] seek[s] to terminate or otherwise modify any of the benefits of [the Appel-lees] provided for in the [Benefit Plan] ... [DataComm] shall be required to first comply with the mandates and procedural requirements of 11 U.S.C. § 1114.”
The District Court affirmed the decision of the Bankruptcy Court, essentially holding that the Appellees were retirees within the meaning of § 1114 because Data-Comm’s action in terminating the Appel-lees the day after it purported to reject the Benefit Plan constituted a “forced retirement”. This timely appeal followed.
II.
The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(b) and 1334. The District Court had appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1), and we have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. Exercising the same standard of review as the District Court, “[w]e review the bankruptcy court’s legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.” In re Trans World Airlines, Inc., 145 F.3d 124, 130-31 (3d Cir.1998) (citing In re Engel, 124 F.3d 567, 571 (3d Cir.1997); Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1223 (3d Cir.1995)). Inasmuch as the parties agree that there are no relevant facts in dispute, our review is limited to the legal determinations of the Bankruptcy Court as affirmed by the District Court. We will thus employ a de novo review of those legal determinations.
III.
Section 365(a) of the Bankruptcy Code provides: “Except as provided in sections *620 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court’s approval, may assume or reject any executory contract or unexpired lease of the debtor.” 11 U.S.C. § 365(a). (The exceptions noted in § 365 have no relevance in this ease).
On the other hand, section 1114 of the Bankruptcy Code “was enacted to protect the interests of retirees of chapter 11 debtors.” 7 Collier on Bankruptcy, ¶ 1114.02[1] (15th ed.2002). That section prohibits a debtor in possession or a trustee from unilaterally modifying or terminating retirement benefits unless (1) the court orders modification or (2) the trustee and the authorized representative of the retired employees agree to modification. 11 U.S.C. § 1114(e)(1).[5] Prior to filing an application seeking court-imposed modification, the trustee must engage in good faith negotiations with the authorized representative of the retired employees regarding the proposed modification, and must provide the authorized representative with relevant information to allow for fair evaluation of the proposal. Id. § 1114(f)(1).[6] Only after the foregoing requirements have been met, and such good-faith negotiations have occurred, is the court empowered to grant the modification motion, if, among other things, modification is necessary to permit reorganization of the debtor. Id. § 1114(g).[7] Accordingly, a debtor in possession or the trustee must continue to pay retiree benefits unless modification of such payments has been ordered by the court or the trustee and the authorized representative of the retired employees have agreed to such modification. Id. § 1114(e)(1).[8]
The procedural protections of § 1114 apply to “retiree benefits,” which are defined with reference to the class of *621 persons entitled to the benefits, ie., “retired employees.”[9] As we have indicated, the overarching question here is whether the provisions of § 1114 apply to the Benefit Plan. Stated differently, the question is whether the Appellees constitute “retired employees” for purposes of invoking the protections of the statute.
DataComm’s main contention on appeal is that Appellees never retired, but rather were still employed and were terminated as employees without cause. As such, Da-taComm argues, the provisions of § 1114, which accord protection only to “retired employees,” never come into play here, leaving § 365 (permitting rejection of exec-utory contracts) as the only operative statute. We are persuaded that this contention elevates form over substance, and is thus unavailing and unacceptable.[10]
Moreover, as a contractual matter, we note that DataComm cannot escape its obligations under the Benefit Plan by arguing that Appellees were terminated rather than retired. As the District Court held, “retirement was the condition precedent to the Appellees’ receipt of certain benefits under the [Plan], and [Data-Comm] prevented the Appellees from voluntarily retiring by discharging them without cause.” The Benefit Plan explicitly and unambiguously states that only the *622 particular proscribed actions by an Eligible Executive could result in the justifiable forfeiture of retirees’ benefits. We believe that the District Court’s reasoning was sound here — the intent of both DataComm and the Appellees was that the Appellees would receive the retirement benefits of the Plan unless they were terminated for cause. They were not. See 13 Williston on Contracts § 39:3 (4th ed.) (“Where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return promise, the promisor is not relieved of the obligation to perform.... ”).
Section 365, when it applies, allows Da-taComm to teiminate executory contracts, with the bankruptcy court’s approval, notwithstanding any contractual obligations thereunder. See, e.g., In re Spectrum Info. Techs., Inc., 190 B.R. 741, 745-46 (Bankr.E.D.N.Y.1996). At issue then, is whether Congress intended the term “retired employees” in § 1114 to encompass the concept of “forced retirement.”
In contending that “forced retirement” does not implicate the provisions of § 1114, DataComm relies heavily on a re-ductio ad absurdum. According to Data-Comm, the District Court’s holding, taken to its logical conclusion, means that § 1114 would apply to a retirement health benefit when DataComm discharged an employee without cause at the age of 25.
Recognizing that the employees affected here were all over the age of 65 (Arcara 66; Smith 68; Cronin 70; Thompson 71), and were purposefully discharged only one day after DataComm filed its 365 Motion, we can only conclude that DataComm’s action was taken deliberately and was designed to thwart the purposes of § 1114. Therefore, accepting the concept of “forced retirement” does not and cannot lead to the absurd result posited by DataComm that an employee could be retired at age 25 if discharged without cause. The contours of such a concept as “forced retirement” may receive appropriate interpretation, when it occurs, by a case-by-case development. What matters here is that the particular facts of this case are compelling enough to warrant the application of such a concept.
As the record reflects, the Appellees were on the verge of retirement,[11] receiving a minimal paycheck for “basically hanging around.” Tr. of Bankr.Hearing at 27. They were founders and long-term senior executives of DataComm, and each was of retirement age and was qualified to warrant entitlement to the benefits prescribed by DataComm’s Benefit Plan, which was designed to compensate long-term senior level employees. See Benefit Plan ¶ 2a. As such, our holding in no way countenances the 25 year old “horrible” scenario envisaged by DataComm.
Under the circumstances presented here, to allow DataComm to deliberately interfere with Appellees’ retirement benefits would operate to frustrate and nullify the objectives of § 1114, which, as we have stated, was “enacted to protect the interests of retirees of Chapter 11 debtors.” 7 Collier on Bankruptcy, ¶ 1114.02[1] (15th ed.2002).
IV.
We address one final issue — an issue not raised or initially briefed by the parties. At oral argument, we asked the question whether the Benefit Plan was an executory contract for purposes of § 365 (which in *623 volves only contracts that are executory in substance and which are not “trumped” by § 1114) and so could be considered by the Bankruptcy Court for rejection on an appropriate application. If the Benefit Plan was not executory, § 365 would have no application as it could not be rejected under that section. We requested supple^ mental briefing on the question. After reviewing the parties’ submissions, we are satisfied that the Benefit Plan is indeed an executory contract.
We set forth the controlling definition of “executory contract” in Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36 (3d Cir.1989): “[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.” Id. at 39 (citations and internal quotations omitted).
The crucial issue for determining whether the instant Benefit Plan was executory is whether the Appellees had material obligations that remain unperformed at the time the bankruptcy petition was filed. See In re Columbia Gas System Inc., 50 F.3d 233, 240 (3d Cir.1995) (“The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed.”) (citations omitted). Thus, our focus is on the restrictive covenant obligations of the Appel-lees, i.e., their obligations, set forth in Paragraph 6 of the Benefit Plan (see note 4 supra). Paragraph 6, among other things, requires Eligible Executives: to not compete; to maintain confidentiality; to refrain from instituting litigation; to agree to participate in litigation initiated by DataComm; and to refrain from negative publicity.
While we have held that the determination of what constitutes a material breach under the Sharon Steel definition is governed by relevant state law, In re Columbia Gas System Inc., 50 F.3d at 240 n. 10, we need not look beyond the Benefit Plan itself to make that determination. The Benefit Plan expressly defines certain acts or events as constituting material breaches of the contract. It states that:
[i]n the event in the sole judgment of the Board of Directors of the Corporation, an Eligible Executive or his spouse directly or indirectly [fails to comply with any of the covenants set forth in Paragraph 6], then, in any such event, the Board of Directors may terminate the status of such person as an Eligible Executive hereunder and all benefits hereunder for such Eligible Employee and his or her spouse shall terminate.
Benefit Plan ¶ 6 and note 4 supra.[12] Thus, if an Eligible Executive breached *624 one of those provisions, it would excuse the future performance of DataComm. By contractual definition, therefore, such obligations are material. See generally Restatement (Second) of Contracts § 237 (1981) (uncured material breach by one party discharges other party’s duty under contract); see also 23 Williston on Contracts § 63:3 (4th ed.) (“Where the contract itself is clear in making a certain event a material breach of that contract, a court must ordinarily respect that contractual provision.”). We are thus satisfied that the Appellees’ obligations are material, and that the Benefit Plan is an executo-ry contract.
V.
We conclude that deliberate and involuntary termination of an employee on the verge of retirement, where the employee has otherwise met all qualifications for retirement, cannot deprive such an employee of the procedural protections of § 1114. We therefore hold that the DataComm Appellees are “retired employees” within the meaning of § 1114. This being so, DataComm’s Benefit Plan providing retirement benefits to such employees was an executory agreement and could not be rejected pursuant to § 365. Accordingly, we will affirm the judgment of the District Court in favor of the Appellees.[13]

. Eligible Executives included the individuals designated in the Benefit Plan (i.e., Arcara, Cronin, Johnson), as well as any other senior corporate officer elected to the office of Senior Vice President or any higher office, and *618 any other senior level employee of DataComm designated by the Board of Directors as an Eligible Executive who had been employed by the company for more than 25 years, and was 60 years of age or older. Benefit Plan ¶ 2(a).

. "Long Term Care: Effective upon approval by the Board of Directors of this Plan, the Corporation shall pay the annual premiums of up to an annual maximum amount of $7,000 (the 'cap'), for Long Term Care insurance coverage in the amount specified in Schedule A to the Plan, for each Eligible Executive and his or her spouse for the remainder of their respective lives.” Benefit Plan ¶ 3.
As more fully explained in note 13 infra, DataComm has waived the argument that the Long Term Care Benefits are not "retiree benefits” within the meaning of § 1114. Thus, while the issue has been raised in this appeal, we neither consider nor decide it here.

. "Retirement Health Benefits: Upon an Eligible Executive’s retirement, the Eligible Executive and his or her spouse shall thereafter receive for the remainder of the lives of the Eligible Executive and his or her spouse, a continuation of the health insurance benefits the Corporation was then furnishing the Eligible Executive, at the Corporation’s sole cost.” Benefit Plan ¶ 4.

. Paragraph 6 provides:
In the event in the sole judgment of the Board of Directors of the Corporation, an Eligible Executive or his or her spouse directly or indirectly, (i) becomes employed by or performs consulting or other services to, or becomes a director of, or makes or retains any investment in or loan to, a competitor of the Corporation (provided the foregoing shall not be deemed a breach if the eligible executive was unaware such entity was a competitor provided he or she promptly divests himself or herself of any such investment upon learning of such event and further provided tire foregoing shall not apply to an investment in securities listed on a national securities exchange or NASDAQ where the aggregate investment is less than $10,000), or, (ii) violates any confidentiality or similar agreement with the Corporation or discloses or uses any confidential or proprietary information of the Corporation other than on behalf of the Corporation, or (iii) institutes or otherwise participates or assists in any litigation or proceedings against or on behalf of the Corporation, its officers or directors, (other than with respect to claims under this Plan or for salaries or fees owed by the Corporation for services actually rendered), or (iv) refuses to reasonably cooperate at the Corporation’s expense, with the Corporation in the prosecution or defense of any litigation or proceeding, or (v) uses, communicates, publishes or otherwise transmits, in any manner whatsoever, negative comments regarding the Corporation or otherwise disparages the Corporation, its products, services, officers or directors, then, in any such event, the Board of Directors may terminate the status of such person as an Eligible Executive hereunder and all benefits hereunder for such Eligible Employee and his or her spouse shall terminate.
*619 Benefit Plan ¶ 6.

. 11 U.S.C. § 1114(e)(1) provides:
Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee” shall include a debtor in possession), shall timely pay and shall not modify any retiree benefits, except that—
(A) the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section, or
(B) the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments
after which such benefits as modified shall continue to be paid by the trustee.
(emphasis added).

. 11 U.S.C. § 1114(f)(1) provides:
Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall—
(A) make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably
(emphasis added).

. 11 U.S.C. § 1114(g) provides:
The court shall enter an order providing for modification in the payment of retiree benefits if the court finds that'—
(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);
(2) the authorized representative of the retirees has refused to accept such proposal without good cause; and
(3) such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities ...,

. See note 5 supra for the statutory text of § 1114(e)(1).

. Section 1114(a) defines "retiree benefits” as:
payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title
(emphasis added).

. DataComm also argues that the provisions of § 1114 do not apply here because Appel-lees were not retired at the time the 365 Motion [to reject DataComm's retirement Benefit Plan] was filed. As we stated, Appel-lees were terminated the day after the filing of the 365 Motion. While it is, of course, true that only retired employees can invoke the protections of § 1114, see, e.g. In re Crafts Precision Indus., Inc., 244 B.R. 178, 184 (1st Cir.BAP2000) ("The legislative history of [§ 1114] clearly reveals that the statute is intended to benefit retirees specifically.”) (emphasis added), we believe that this argument suffers from multiple flaws. First, it ignores the fact that DataComm had notified Appel-lees of their imminent termination prior to filing the 365 Motion. The argument, then, that the Appellees were still employed and not retired for purposes of determining the application of § 1114 we regard as specious. Such a result contravenes basic norms of fairness and undermines the purposes of § 1114, which "was enacted to protect the interests of retirees of Chapter 11 debtors.” 7 Collier on Bankruptcy, ¶ 1114.02[1] (15th ed.2002).
Second, it rests upon a faulty premise. Da-taComm's contention here is that the relevant date for determining the applicability of § 1114 is the date when the rejection of the Plan would have become effective, which in this case would be either the date immediately prior to the petition date, November 2, 2001, or, at the very latest, the filing date of the 365 Motion, November 29, 2001. This contention fails for a few reasons. Even assuming, without deciding, that the rejection of an executory contract under § 365(a) becomes effective upon the filing of the motion, but see In re Thinking Machines Corp., 67 F.3d 1021, 1028 (1st Cir.1995) ("[W]e hold that a rejection of a nonresidential lease under section 365(a) becomes legally effective only after judicial approval has been obtained.”), that merely begs the question of whether § 365 governs the Benefit Plan in the first place. If, as Appellees maintain, § 1114 applies, then DataComm’s 365 Motion was ineffective, and the decisive date of any rejection, however defined, could not occur until after the requirements of § 1114 have been satisfied.
Accordingly, we reject DataComm’s contention that Appellees were still employed, rather than retired, albeit involuntarily, at the filing of the 365 Motion and therefore outside the protective ambit of § 1114.

. We note that under the Employee Retirement Income Security Act of 1974, the age of "[n]ormal retirement” is sixty-five. Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 281 n. 3 (3d Cir.1988) (citing 29 U.S.C. § 1002(24)).

. Our dissenting colleague has discussed the issue of "materiality” at length, but he has made no reference to the very terms of the Benefit Plan itself. It is that Plan, as we have stated, which defines the "materiality” of the Appellees’ obligations — it explicitly provides that the failure of an Eligible Executive to comply with the covenants of Paragraph 6 excuses the future performance of Data-Comm. We are satisfied that the parties intended the provisions of Paragraph 6 to be material. No further analysis is therefore required. As such, the dissenting opinion's analysis, while perhaps thorough, substitutes its own views on materiality for what the parties explicitly and formally agreed to as being "material” and vital to their contract.
We also find the dissent’s reliance on In re Columbia Gas Sys., Inc., 50 F.3d 233 (3d Cir.1995), to be misplaced. That case stands for the proposition that where the remaining obligations in a contract are mere conditions, not duties, a contract cannot be considered executory for purposes of § 365. The distinction between conditions and duties, essential to the holding in In re Columbia Gas Sys., is simply inapposite here.

. DataComm raises an additional issue for the first time on appeal — whether § 1114 applies to the Long Term Care Benefits in particular and, if it does not, whether DataComm can sever them for purposes of proceeding under § 365. DataComm’s position is that the Long Term Care Benefits did not qualify as “retiree benefits” since they were payable during Appellees' employment. DataComm offers no exceptional circumstances to excuse its failure to raise this argument in the Bankruptcy Court and the District Court. Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 142 (3d Cir.2001) ("Generally, barring exceptional circumstances, like an intervening change in the law or the lack of representation by an attorney, this Court does not review issues raised for the first time at the appellate level.”) (citations omitted); Brown v. Philip Morris Inc., 250 F.3d 789, 799 (3d Cir.2001) (”[A]rguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible of review in this Court absent exceptional circumstances (e.g., the public interest requires that the issues be heard or manifest injustice would result from the failure to consider such issues).”) (citations omitted). Indeed, it appears that Data-Comm became aware of the argument only after the District Court alluded to the legal issue in its order affirming the Bankruptcy Court. Although DataComm’s Reply Brief claims that the District Court held that § 1114 is not applicable to the Long Term Care Benefits contained in Paragraph 3 of the Benefit Plan, it appears that DataComm has misstated the District Court's action. In fact, the District Court, in footnote 8 of its unpublished opinion, stated that it would not address the issue because it had not been raised by DataComm. We, too, express no opinion on this matter, as it has clearly been waived.