**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-3272

_____

In re: JOHN W. HOWARD,
                                                            Debtor

ROBERT O. LAMPL,
                                                            Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-10-cv-00559)
District Judge: Honorable Arthur J. Schwab

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 28, 2011

Before:  FISHER, VANASKIE and ROTH, *Circuit Judges*

(Filed: February 24, 2012)

_____

OPINION

_____

VANASKIE, *Circuit Judge*.

Appellant Robert O. Lampl ("Lampl") appeals a decision of the District Court

affirming a decision of the Bankruptcy Court denying Lampl's motion seeking payment

of attorney's fees in connection with his representation of the debtor in a bankruptcy

case. Because we find that the Bankruptcy Court did not err in rejecting Lampl's claims for compensation, we will affirm.

I.

As we write principally for the parties, we recite only those facts necessary to our decision. On April 4, 2008, John W. Howard ("Howard") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Pennsylvania. On September 14, 2008, the Bankruptcy Court converted Howard's individual case to a case under Chapter 7 of the Bankruptcy Code. Lampl was the Attorney of Record for Howard throughout the bankruptcy case.

On February 5, 2009, Howard and the other interested parties in the bankruptcy case reached an agreement ("Settlement Agreement") providing for a universal settlement of all outstanding disputed items in the case. One of the disputed items concerned the distribution of a monthly $5,000 payment ("Monthly Payment") arising from the sale of Howard's interest in an automobile dealership commonly known as Midtown Motors. Section 4(i) of the Settlement Agreement provided for the distribution of the Monthly Payment as follows:

> The Trustee agrees that as of the date of execution of this Agreement by all of the Parties to same, Howard shall be paid $2,000 of the $5,000 monthly payment . . . as exempt property pursuant to 11 U.S.C. 522 of the Bankruptcy Code. Each month, the Trustee shall collect the entirety of the Midtown Motor payment and remit the $2,000 to Howard's attorney, Robert O. Lampl, for the benefit of Howard, from which Robert O. Lampl will remit payment of $1,000 monthly to Diana Howard. . . . The remaining $3,000 of each monthly payment shall be retained by Howard's Bankruptcy Estate for distribution to Howard's creditors.

2

(A. 73). The Bankruptcy Court approved the Settlement Agreement in an Order entered on March 10, 2009.

According to Lampl, "the Parties adhered to the Settlement agreement for several months and the Trustee began to distribute [to Howard's ex-wife, now known as Diana Miller] Miller's $1,000 directly and $1,000 was sent directly to Lampl." (A. 85).[1] Lampl then retained these payments because, according to him, "Howard agreed to the designation of the $1,000 as fees to Lampl and the distribution was known by all parties throughout the negotiating process." (A. 84.)

The distribution of the monthly $2,000 payment subsequently became a focus of the divorce proceedings between Howard and his ex-wife. In September 2009, Howard's attorney in his divorce proceedings, Raymond H. Yackel ("Yackel"), "sent a letter to Lampl inquiring about the monthly $1,000 distribution and requesting documentation that the distribution was in fact for fees." (A. 85). In a letter dated September 30, 2009, which Lampl sent to Yackel and copied to Howard, Lampl explained "that the monies were a monthly payment to Lampl's fees and that all parties were aware of this assignment." (A. 85).

On November 30, 2009, the Family Court of Monongalia County West Virginia entered an "Agreed Amendment to Bifurcated Final Decree of Divorce Order" ("Agreed Amendment" or "Family Court judgment") addressing the distribution of the Monthly

---

[1] It is notable that the explicit terms of the Settlement Agreement provide for the Trustee to distribute the $2,000 to Lampl, who was then charged with distributing $1,000 to Miller. Lampl apparently overlooks the variance from this explicit term.

Payment. The "Bifurcated Final Decree of Divorce," entered one month prior to the Agreed Amendment, required a representative of Midtown Motors to make certain payments to Miller. The Agreed Amendment released Midtown Motors from making payments to Howard or Miller, and provided that the Bankruptcy Trustee "is authorized to distribute to [Miller] the one thousand dollar ($1,000) share of John W. Howard regarding monthly payments now being made to trustee from Midtown Motors Inc." (A. 116).

By letter dated February 5, 2010, Attorney Delby B. Pool ("Pool"), Miller's attorney in the divorce proceedings, stated that, because the Monongalia Family Court "awarded and assigned [Howard's] $1,000 to [Miller]," Lampl no longer "has any right to continue to receive [Howard's] money on behalf of [Miller]." (A. 118). Pool further requested that Lampl immediately refund any money he received in January or February 2010 "that has been assigned to [Miller]." (A. 118).[2]

Lampl disputed this conclusion, contending that the Monongalia Family Court judgment conflicts with the Settlement Agreement. On February 15, 2010, Lampl filed a "Motion to Enforce Settlement, To Allow Charging Lien, Or, Allow Payment Under the Common Fund Doctrine" ("Motion to Enforce" or "Motion") in Bankruptcy Court. Lampl's Motion asserted three separate theories of entitlement to the monthly $1,000 distribution as attorney's fees.

---

[2] Lampl's Motion noted that the Chapter 7 Trustee "is holding the payments for January and February in escrow pending" the Bankruptcy Court's resolution of the matter. (A. 85). It is unclear from Lampl's brief whether the Trustee distributed these funds to Miller following the Bankruptcy Court's denial of Lampl's Motion.

Lampl principally argued that the terms of the Settlement Agreement provide for him to retain the $1,000 distribution, and requested the Bankruptcy Court to enforce the Agreement. According to Lampl, "[t]he provisions of the Settlement Agreement clearly state that the $2,000 payment is to be paid directly to Lampl, of which $1,000 is to be remitted to Miller," while the "remaining $1,000 payment for the benefit of the Debtor was clearly assigned to Lampl for the payment of fees." (A. 86). Lampl claimed that "[t]his assignment was known by all parties," and concluded that "[t]he Order from Monongalia County completely contradicts [the Bankruptcy Court's] Order and the agreement of all the Parties to the settlement." (A. 86). Because the Order approving the Settlement Agreement provided that the Bankruptcy Court "shall retain jurisdiction with respect to all matters and/or any disputes arising from or related to implementation of this Order," Lampl urged the Bankruptcy Court to exercise its jurisdiction and enforce the terms of the Settlement Agreement. (A. 65). Specifically, Lampl requested the Bankruptcy Court to order Miller, Howard, their respective attorneys, and the Trustee "to adhere to the Order" and "require the monthly payments of $1,000 be sent directly to [Lampl]." (A. 86).

Lampl also advanced two alternative theories of his entitlement to the $1,000 monthly payment. First, he argued that the Court should impose a charging lien against the monthly payment. Second, he claimed that under the common fund doctrine he was entitled to "a reasonable attorney's fee for his work," and requested the Court to pay his fees from the $1,000 monthly payment. (A. 88).

5

In an Order entered on March 23, 2010, the Bankruptcy Court rejected each of Lampl's arguments. First, it found that "nothing in the [Agreement] provides that Mr. Lampl may collect his fees, if any, from [the Monthly Payment]." (A. 132). The Court likewise rejected Lampl's request for a charging lien and for payment under the common fund doctrine, observing that Lampl had never filed a fee petition nor otherwise disclosed to the Court that he would seek to have any unpaid fees deducted from the Monthly Payment and remitted to him. Thus, observed the Court, it "never approved payment of the $1,000 each month as counsel fees in the first instance." (A. 131-32).

Lampl appealed this decision to the District Court, which, on July 8, 2010, affirmed the Bankruptcy Court's decision in a docket text order without any explanation. Lampl now appeals, requesting this Court to reverse and remand the case to the Bankruptcy Court for "an evidentiary hearing in regard to the factual matters at issue." (Appellant's Br. at 13).

## II.

The District Court had jurisdiction under 28 U.S.C. § 158(a), which grants district courts jurisdiction to hear appeals from final orders of the Bankruptcy Court. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291 and 28 U.S.C. § 158(d). In reviewing the Bankruptcy Court's decision, we exercise the same standard of review as the District Court. *In re General DataComm Industries, Inc.*, 407 F.3d 616, 619 (3d Cir. 2005). As such, "we review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re*

*Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998) (citing *In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997)).

III.

Lampl raises two arguments on appeal, and we address each in turn.  First, he argues that the Bankruptcy Court erred "in requiring Debtor's Counsel to file a proof of claim and/or a fee application in [Howard's] Bankruptcy in order to have enforceable fees due and owing." (Appellant's Br. at 10).  In this regard, Lampl explains that the monthly $1,000 payment was designated in the Settlement Agreement as non-Estate property, and that "payment to Debtor's Counsel by [non-Estate property] is not subject to the fee application requirements of 11 U.S.C. §§ 330 and 327." (Id.).  Lampl then reasons that, because assignments of non-Estate property such as tax refunds "are an acceptable practice to pay Chapter 7 Debtor's Counsel's retainers," the "assignment of his monthly payment is no different than an assignment of a tax refund." (Id. at 11).

This argument is unavailing because the Bankruptcy Court determined that the Settlement Agreement contained no assignment of the $1,000 monthly payment to Lampl.  We therefore disagree with Lampl's characterization of the Court's decision, which rejected his claim to entitlement under the terms of the Settlement Agreement because it found that the Agreement contained no such provision—not because Lampl had failed to comply with fee application requirements.

Lampl argues that the Bankruptcy Court erred in rejecting his charging lien and common fund contentions due to his failure to file a fee application.  Although its reasoning is less than pellucid, the Bankruptcy Court did not err in relying upon Lampl's

7

failure to file a fee petition or otherwise disclose to the Court that his fees would be paid from the Monthly Payment. Both the charging lien and common fund doctrine operate on equitable principles. *See, e.g.*, *United States ex. Rel. Bogart v. King Pharmaceuticals*, 493 F.3d 323, 328 (3d Cir. 2007) ("The common fund doctrine is equitable in nature, intended to avoid unjust enrichment at the expense of the successful litigant."); *In re Cendant Corp. Securities Litigation*, 404 F.3d 173, 188 (3d Cir. 2005) ("The common fund doctrine is essentially a matter of equity, and gives courts significant flexibility in setting attorneys' fees.") (citations omitted); *Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 809 F.2d 212, 218 (3d Cir. 1987) ("The equitable charging lien gives an attorney the right to be paid out of a fund in court which resulted from his skill and labor, thereby extending only to services rendered in the particular case."). Equitable remedies are created to advance interests of fairness, "moral rectitude," and flexibility where an adequate remedy at law is unavailable. Dan B. Dobbs, 1 Dobbs Law of Remedies § 2.1(3), at 63 (2d ed. 1993). Even if the statutory provisions pertaining to fee petitions do not apply to claims based upon a charging lien or common fund theory, a debtor attorney's failure to disclose the fact that he will take money from a settlement for which bankruptcy court approval is required runs contrary to the considerations underlying the equitable theories of recovery advanced by Lampl. Thus, given the absence of any provision in the Settlement Agreement entitling Lampl to a distribution from the Monthly Payment and Lampl's admitted failure to disclose his intention to appropriate part of the Monthly Payment, the Bankruptcy Court did not err in rejecting Lampl's common fund and charging lien theories.

Lampl's second argument on appeal is that the Bankruptcy Court erred in "refusing to exercise its jurisdiction to determine the effect of its own Order regarding claims by Debtor's Counsel for fees to property administered by the Chapter 7 Trustee." (Appellant's Br. at 12.) Lampl explains that the terms of the Bankruptcy Court's March 10, 2009 Order vested it with jurisdiction "over all matters and/or disputes arising from or related to implementation of this Order." (A. 65). Lampl then claims that the Monongalia County Court Order "completely contradicts" the Settlement Agreement "and the agreement of all the Parties to the settlement," stating that "[e]vidence would show that the remaining $1,000 payment for the benefit of the Debtor was clearly assigned to Lampl for the payment of fees." (Appellant's Br. at 12). Lampl next argues that "any questions or need for legal remedies regarding [the] Stipulation and Order were to be brought" to the Bankruptcy Court, and that the "Court in Monongalia County should not have interpreted the stipulation and settlement agreement." (Id.). Lampl concludes that "[t]he refusal of the Bankruptcy Court to enforce the agreement leaves [him] without legal remedy and constitutes a denial of due process." (Id. at 12-13).

Lampl's claim that the Bankruptcy Court erred in neglecting its jurisdiction to enforce the Settlement Agreement is flawed for at least two reasons. First, the Bankruptcy Court did not "refuse … to enforce the agreement" because it lacked jurisdiction to do so; rather, it found that the Monongalia Court Order directing the $1,000 payment to be paid to Miller was not contrary to the terms of the Settlement Agreement at all. (A. 132). In this sense, the Bankruptcy Court did in fact exercise its jurisdiction to hear disputes arising under the Agreement. And second, the fact that the

9

Court reached a decision adverse to Lampl does not "constitute a denial of due process," and is not an abdication of the Court's jurisdiction.

As the Bankruptcy Court aptly observed, "what [Lampl] is really attempting to do is collaterally attack the order(s) entered in Family Court of Monongalia County." And as the Court also properly noted, "[t]o the extent [Lampl] believes that the order(s) of the Family Court . . . are in error, he may lodge his challenges there."

For the foregoing reasons, we will affirm the denial of Lampl's Motion.